CARRIE M. NOYES, Respondent, v. PHŒNIX MUTUAL LIFE INSURANCE COMPANY, of Hartford, Appellant.

April 10, 1876.

W. K. N. made an application for life insurance, directed and forwarded to defendant at Hartford, by their agent at St. Joseph. The policy was made out, in accordance with the application, "to take effect when countersigned by the agent at St. Joseph," and was mailed to the agent, to be countersigned and delivered. W. K. N. died the day before the policy arrived at St. Joseph. *Held*, that there was no completed contract of insurance.

APPEAL from St. Louis Circuit Court.

*General term reversed; special term affirmed.*

*Frank Eno,* for appellant, cited : Hoyt *v.* Mutual Benefit Life Ins. Co., 98 Mass. 589 ; Markey *v.* Mutual Benefit Life Ins. Co., 103 Mass. 78 ; Heiman *v.* Phœnix Mutual Life Ins. Co., 17 Minn. 153 ; Badger *v.* American Popular Life Ins. Co., 103 Mass. 244 ; Collins *v.* Ins. Co., 2 Big. 161 ; St. Louis Mutual Life Ins. Co. *v.* Kennedy, 6 Bush (Ky.), 450.

*Chandler & Young,* for respondent, cited : May on Ins., secs. 44, 61, 62, 63 ; Baldwin *v.* Chouteau Ins. Co., 56 Mo. 157 ; Hill *v.* Ressegieu, 17 Barb. 162 ; Keim *et al. v.* Home Mutual Ins. Co., 42 Mo. 38 ; Kentucky Mutual Ins. Co. *v.* Jenks, 5 Ind. 96 ; Cooper *v.* Pacific Ins. Co., 7 Nev. 122 ; Ang. on Ins., secs. 31, 35, 36, 37, 42 ; McCullough *v.* Eagle Ins. Co., 1 Pick. (Mass.) 278 ; Duer on Ins. 66, sec. 10 ; Lungstrass *v.* German Ins. Co., 48 Mo. 204 ; Hallock *v.* Ins. Co., 2 Dutch. (N. J.) 278, 279 ; Taylor *v.* Ins. Co., 9 How. 390 ; McComas *v.* Covenant Mutual Life Ins. Co., 56 Mo. 573 ; Wag. Stat. 1068, sec. 34 ; Meyers *v.* Ins. Co., 27 Penn. St. 270 ; Second *et al. v.* Steel, 20 How. 104.

BAKEWELL, J., delivered the opinion of the court.

This is a proceeding in equity to enforce the collection of a policy of insurance on the life of William K. Noyes, husband of plaintiff. The alleged insurance was for the benefit of plaintiff.

The answer of defendant admitted the making of the application for insurance referred to in the petition, but denied the completion of any contract of insurance.

The case was submitted to the court sitting as a jury, on an agreed statement of facts, and there was a verdict and judgment for defendant. On appeal to general term, this judgment was reversed ; to the action of the court in genral term, in reversing the judgment for defendant at special term, defendant excepted, and the case is brought to this court by appeal.

From the agreed statement of facts, and the documentary

evidence preserved in this record, it appears that on November 28, 1871, William K. Noyes, at St. Joseph, Missouri, made an application for insurance, signed by himself and directed to defendant at Hartford, Connecticut. This application was forwarded by Harry Conwell, defendant's agent at St. Joseph, Missouri, to the home office at Hartford.

The application contained a clause that " it is acknowledged and agreed, by the undersigned, that this application shall form the basis of the contract for insurance, which contract shall be completed only by delivery of policy." The policy contains a clause that it is " to take effect when countersigned by H. Conwell, agent at St. Joseph, Mo."

The application was received at Hartford, by defendant, in due course of mail, and its terms accepted by defendant, and on December 2, 1871, the policy was made out, in compliance with the application, and mailed to the agent, Conwell, to be by him countersigned and delivered to William K. Noyes, on payment of the first premium.

On December 4th, Noyes died; on December 5th, Conwell, the agent, received the policy at St. Joseph; on December 6th, plaintiff tendered the first premium and demanded the policy, which the agent refused to deliver, and returned the same to defendant, which it retained, and still keeps. Proofs of death were duly tendered and refused. There was no special agreement, between the deceased and defendant's agent at St. Joseph, as to when the policy should go into effect, nor was there any agreement between the parties to this suit except such as may be inferred from the facts and circumstances of the case as set forth. It was not required by defendant, or its agent at St. Joseph, that the first premium should be paid before the delivery of the policy to William K. Noyes, at St. Joseph; but payment was to be made upon delivery of the policy.

If from this agreed statement, and the application and policy in evidence, any binding obligation rests upon

defendant, it is agreed that plaintiff has fulfilled everything required of her.

The plaintiff asks the court to grant the following declarations of law :

1. " That if everything necessary to complete the contract of insurance was agreed upon, and the only thing lacking to perfect the policy was the countersignature of defendant's agent at St. Joseph, then defendant cannot take advantage of the failure of its own agent so to countersign said policy, but the law will consider that done which ought to have been done."

2. " That if the facts agreed upon show, after the execution of the policy, the defendant mailed the same to its agent at St. Joseph, to be countersigned and delivered by said agent, then the law implies an agreement on the part of the defendant to have its said agent so countersign and deliver said policy, and, if said agent failed or refused to do so, the rights of plaintiff were not affected by such failure or refusal of said agent."

3. " The contract of insurance between defendant and deceased became complete whenever all things necessary to the consummation of said contract had been fully agreed upon between the parties."

4. " That, under the pleadings and facts agreed upon, plaintiff is entitled to recover."

These declarations of law were refused.

At the instance of defendant, the court gave the following declarations of law :

1. " That, on the agreed statement of facts and exhibits, the plaintiff has failed to establish a cause of action."

2. " That there is no evidence of a contract of insurance, or purpose to contract, otherwise than by a policy made and delivered upon simultaneous payment of the first premium."

3. " The acceptance of plaintiff's application is not evidence of a contract to insure, but only of a willingness to contract, upon payment of premium by party whose life was proposed to be insured."

. 4. " Plaintiff is not entitled to recover unless there was a policy made and delivered in the life-time of William K. Noyes.''

5. "The law presumes, in a contract of this kind, that the policy is not delivered unless paid for (which payment is the first premium, in this case), and if plaintiff has not proved a payment of the first premium during the life-time of William K. Noyes, or that such payment was waived by defendant, then there was no delivery, and plaintiff cannot recover.''

6. " The burden is on plaintiff to show that the real intention and agreement of the parties was to pass the legal title and possession immediately on the making of the policy at the office in Hartford, and without payment of premium, or countersigning by agent at St. Joseph. Unless plaintiff has proved this affirmatively, he cannot recover in this action.

7. " The policy in suit did not become a contract in effect, not having been countersigned by defendant's agent at St. Joseph. "

It was formerly held, both in England and America, that, to give vitality to an agreement, not only the minds must meet, but the fact of such agreement must be communicated ; but these cases have been overruled, and it is now everywhere held that, as soon as an offer by letter is accepted, consent is given and the contract is complete, though the party making the offer may be ignorant of the fact.

It is strongly contended by counsel for the plaintiff, in the case at bar, that there was here a complete contract between defendant and plaintiff; that the countersigning of this policy was a merely ministerial act which the agent was compellable to perform, and which equity would consider as done, and that the delivery of the policy to the agent, or the depositing in the mail directed to him, was a delivery of the policy to the insured.

In *Badger* v. *American Popular Life Insurance Company*, 103 Mass. 244, the defendant sent to A. F. Badger,

plaintiff's intestate, the policy in question containing the following clause : "Nor shall this policy be in force until it be countersigned by A. F. Badger, agent at Boston." This agent was himself the person whose life was to be insured. On his death the policy was found among his papers, not countersigned. He held it in his power to make it a valid contract by countersigning, but he did not do so. It was held that the company had a right to make this condition, and the court would not inquire into its motive ; and, there being no evidence that it was waived, it was held that no contract of insurance existed, and defendant was not liable.

In *Heiman* v. *Phœnix Mutual Insurance Company*, 17 Minn., 153 it is held that making the policy, delivering the same to defendant's agent—whose duty it was to receive the premium and deliver the policy—and presentation of the policy to plaintiff's alleged agent, for payment of the premium, are not evidence of a contract to insure, but of a willingness to enter into such a contract on payment of the premium by the other party.

It is said by Judge Hare, in *Collins* v. *Insurance Company* (7 Ph. 201), that, if the minds of parties meet, in an agreement for insurance, the policy will be valid without actual delivery. The contract will not fail because the instrument which is the evidence of it is retained by the covenantor ; his keeping will be regarded as that of the covenantee. But the one question is, was there such a contract ?

Did the party alleged to be bound manifest an intention to put the instrument beyond his control and render it the property of the other party ? In that case a policy was duly executed and sent to the agent of the company, but not delivered to the insured, and held till payment should be made of the premium, which was not done when the insured died, and the court held the contract of insurance incomplete.

In New Jersey it is held, in a case of fire insurance (*Hal-*

lock v. *Insurance Company*, 2 Dutch.), that the contract is complete when the premium and risk is accepted. If no policy is made, only the plaintiff can sue on this contract, or force from them a policy in equity; that, under these circumstances, a policy drawn up and signed by the proper officers needs no further delivery; it is a vital policy as soon as signed, becomes instantly the property of the insured, and is held by the insured for his use; and that, by sending the policy from the home office to the local agent at the residence of the insured, they made the agent a trustee for the plaintiff, and, in effect, delivered the policy as if it had been mailed directly to the insured. In this case the loss occurred before the policy was actually delivered to the plaintiff's hands; but he had paid the premium.

It has been decided in Pennsylvania (*Meyers* v. *Insurance Company*, 27 Penn. 268) that, although a policy of life insurance may expressly require the countersigning of an agent of the company, it is not under all circumstances essential, and may be dispensed with on the principle of defective execution of powers, where the intention to execute is sufficiently plain.

And the Supreme Court of the United States has decided (*Tayloe* v. *Merchants' Ins. Co.*, 9 How. 390) that an agreement for fire insurance is complete when the terms have been agreed upon between the parties, and the reciprocal rights and obligations of the insurer and insured date from that moment, without reference to the execution and delivery of the policy, *unless these two elements are embraced within the terms agreed upon*.

The contract imports an obligation to execute and deliver a policy to the insured, and, in the contemplation of the negotiations, the policy executed in accordance therewith, and dated on the day of the completion, though not actually delivered till afterwards, or at all, will take effect from its date, *unless some other terms are expressly agreed upon*. In our own State it is held that, when an applica-

tion is filed, and on the same day the company makes and signs the policy, the contract is complete, and in case of fire the insured can recover, though up to that date there has been no delivery. *Keim* et al. v. *Home Mutual Ins. Co.*, 42 Mo. 38; *Baldwin* v. *Chouteau Ins. Co.*, 56 Mo. 151.

These principles of these opposing cases are invoked by counsel on either side, and strongly insisted upon as decisive of this case. But we do not so regard them.

It is alleged in the agreed statement that there was no agreement between Noyes and defendant as to when the policy was to go into effect. When the defendants accepted the risk they fixed the date from which it was to begin, in the written policy signed by them and mailed to their agent. That date is said to be the date on which the policy should be countersigned by the agent at St. Joseph. Their agreement said, as plainly as words can say it: We accept this risk, to commence at such date after the arrival of this policy at St. Joseph as shall be fixed by our agent, who shall evidence it by countersigning the policy, and by the same act give this contract life. There is no other date whatever mentioned in the policy for the commencement of the risk. The insurance is for the term of the natural life of Noyes, to commence from the date of the countersigning of the policy. The policy did not reach St. Joseph till December 5th, and Noyes was then dead. The risk, therefore, never commenced. If the policy had been mailed direct to Noyes, if it had reached him while yet alive, yet, so long as it was never countersigned by the agent, the period limited for the beginning of the term of the risk never commenced, and the contract itself was not complete.

In matters of contract, insurance companies and other corporations stand before the equal laws as do natural persons. The courts cannot modify the contracts made by them, nor relieve against cases of apparent hardship arising from accident or neglect, by compelling the companies to do what they are not bound to do by the terms of their

agreement. Had the contract in this case been complete, the agent might have been compellable to fix a day for the commencement of the risk prior to the death of Noyes. But the case does not stand so. The company had made no contract to insure.

The most that can be said is that negotiations had gone thus far—that defendant had said that their agent, on the arrival of the policy, might make a contract with Noyes on the terms therein named. It is difficult to see what language more fitted to convey this idea could be employed.

Not only does defendant expressly say that there is no contract until the policy has been countersigned after its arrival at St. Joseph, but it fixes the date of the commencement of the risk at a future, uncertain time, to be determined by this act. When the policy arrived at St. Joseph the subject of insurance no longer existed, and the negotiation was necessarily at an end. Had the agent then countersigned and delivered the policy, it would have availed nothing, for, to make it available, the risk must, by the express terms of the contract, by impossibility, have commenced then, and only then, after the destruction of the life of Noyes, the thing to be insured, which is absurd.

In this view of the case, it becomes unnecessary to comment upon the instructions given or refused. It is sufficient that the result at which the learned judge at special term arrived is correct. In our opinion the agreed case, and application, and policy in evidence fail to show any cause of action against defendant, and judgment was rightly entered for defendant at special term.

The judgment of the Circuit Court in general term, reversing the judgment of special term, is therefore reversed, and the judgment of the Circuit Court at special term is affirmed. The other judges concur.