DORTHE MISSELHORN, Plaintiff in Error, v. MUTUAL
RESERVE FUND LIFE ASSOCIATION,
Defendant in Error.

St. Louis Court of Appeals, April 24, 1888.

LIFE INSURANCE — POLICY AVOIDED BY DEATH BEFORE DELIVERY.
Whatever may have been the previous oral negotiations or agree-
ments between the parties, when the written application for
insurance provided that all the statements therein should be a part
of the contract, and contained a further provision that : " Under
no circumstances shall the certificate hereby applied for be in force
until the actual payment to, and acceptance of the first annual
dues by the association, and actual delivery of the certificate to
the applicant with a receipt for the payment of the first annual
dues, signed by the president, secretary, or treasurer of the asso-
ciation, during the lifetime of the applicant," and when the certif-
icate or policy of life insurance itself contained a like stipulation,
there can be no recovery on such certificate or policy, if the per-
son assured was already dead before the same was written and
transmitted for delivery.

APPEAL from the St. Louis Circuit Court, HON.
GEORGE W. LUBKE, Judge.

*Affirmed.*

GEO. W. TAUSSIG, for the plaintiff in error :
Although the printed clauses of the application and
certificate required a delivery of the certificate to the
insured in person during his life, this condition was
waived by the written clauses that the plaintiff was the
beneficiary, and by the fact that the defendant delivered
the policy to the plaintiff. 2 Wood on Fire Ins. [2
Ed.] 170 ; May on Ins., sec. 239 ; *Archer v. Ins. Co.*, 43
Mo. 434 ; *Steinbach v. Ins. Co.*, 54 N. Y. 90. The
application and certificate so far as they relate to the
delivery of the certificate are so repugnant that they
are irreconcilable.  The defendant did waive any
requirement of a delivery to the member insured in

person or otherwise: (1) By necessary implication from accepting plaintiff as the beneficiary; (2) by declaring the contract to be executed and delivered in New York; (3) by intentionally delivering the certificate to plaintiff. "The insurer cannot be heard to demand a literal fulfillment which he knows to be impossible in the nature of things." To fall back upon an obstacle that is equally patent before and after the making of the promise would be to violate every principle of fairness which courts are accustomed to recognize in the settlement of such controversies as the present. *Hicks v. Ins. Co.*, 6 Mo. App. 254. The rule is well established, in cases of fire insurance, that the insurer is treated as licensing the using or keeping, in a reasonable way, all such articles as are essential to the business, or such as are usually, although not necessarily, employed in its prosecution, in all its details, although such use or keeping is expressly prohibited in the printed conditions of the policy. The application of the rule is not to be balked by a stipulation that the notice or waiver must be written in or upon the policy, together with the fact that there is no such writing. *Parks v. Ins. Co.*, 26 Mo. App. 536; *Ins. Co. v. Hall*, 12 Mich. 202; Wood on Fire Ins. [2 Ed.] 170; May on Ins., sec. 239; *Archer v. Ins. Co.*, 43 Mo. 434; *Steinbach v. Ins. Co.*, 54 N. Y. 90. "An insurance policy issued upon the life of a husband for the benefit of the wife is her property." *Pence v. Makepeace*, 65 Ind. 345. Unless the delivery to plaintiff was intended to be a waiver of any requirement "to deliver the certificate to Geo. W. Misselhorn in person", then, as was justly said by Mr. Justice Cooley, " it was a fraud on their part to receive the premium moneys and deliver the policy without intending it should have effect under such circumstances. Such a fraud the law will not permit to be consummated." *Ins. Co. v. Olmstead*, 21 Mich. 246. " The necessity of performing a condition precedent in a contract may be waived by the party in whose favor it is stipulated, either expressly or by the implication from

his acts or conduct." *Dobbins v. Edmonds*, 18 Mo. App. 307; *Giddings v. Ins. Co.*, 90 Mo. 272. Where a party, for a valuable consideration, gives to another an order payable out of a fund not then in existence, such party cannot by his own default prevent the creation or realization of the fund and interpose the absence or failure of the fund as a defense to an action upon the order. *Risley v. Smith*, 64 N. Y. 576. If the promisor disable himself from performing the contract on his part, he thereby excuses the performance of all future conditions precedent to his liability. Leake on Contracts, 666, 668. The plaintiff was under no obligation, legal or moral, to notify the defendant of her husband's death, when the policy was delivered to her. *Keim v. Ins. Co.*, 42 Mo. 38, 42; *Baldwin v. Ins. Co.*, 56 Mo. 151; 1 Wood on Fire Ins. 520. Whether there was a waiver of the printed clauses relating to the delivery of the certificate, was a question of fact, which should have been submitted to and determined by the court. *Ehrlich v. Ins. Co.*, 88 Mo. 249.

WM. C. & JAS. C. JONES, for the defendant in error: In the case of *McCully v. Ins. Co.*, 18 W. Va. 782, 786, a written application for life insurance was made by A. to the local agent of the company, whose only authority was to receive applications and collect premiums. A. gave to the agent his promissory note for the premium, the application, which contained a clause that the contract should "be completed only by delivery of the policy," was forwarded to home office, and a policy was returned to the agent, which declared on its face that it was to take effect when countersigned by the agent. The policy was not so countersigned nor delivered. A. soon afterwards died. The court held there was no contract of insurance. *Schwartz v. Ins. Co.*, 18 Minn. 448; *Ins. Co. v. Kennedy*, 6 Bush, 450; *Ins. Co. v. Roestle*, 1 Gray (Mass.) 336. In the case of *Noyes v. Ins. Co.*, 1 Mo. App. 584, there was no agreement between the assured and the company as to the date at which the

policy should go into effect. The company issued its policy containing a clause that it should "take effect when countersigned by H. Conwell, agent at St. Joseph, Mo." When the policy reached St. Joseph, Noyes was dead. The court held that the risk never commenced. *Schwartz v. Ins. Co.*, 18 Minn. 448; *Ins. Co. v. Kennedy*, 6 Bush, 450; *Marks v. Ins. Co.*, 117 Mass. 528; *Berthaud v. Ins. Co.*, 13 La. Rep. 539; May on Insurance, secs. 43, 44, 45; *Baldwin v. Ins. Co.*, 56 Mo. 151; *Benevolent Ass'n v. Conway*, 10 Ill. App. 348; *Badger v. Ins. Co.*, 103 Mass. 244; *Linn v. Burgoyne*, 13 B. Mon. 400; *Collins v. Ins. Co.*, 7 Ph. 201; *Taylor v. Ins. Co.*, 9 How. 390; *Markey v. Ins. Co.*, 118 Mass. 178; s. c., 126 Mass. 158; *Heiman v. Ins. Co.*, 17 Minn. 153; *Ins. Co. v. Willetts*, 24 Mich. 268; Bliss on Insurance, secs. 147, 426; *Schaffer v. Ins. Co.*, 89 Pa. St. 296. This precise question has been twice before the United States circuit court. In both cases the present association defendant was there the defendant. In both cases the finding was for the defendant. *Kohen v. Life Ass'n*, 28 Fed. Rep. 705; *Misselhorn v. Life Ass'n*, 30 Fed. Rep. 545.

PEERS, J., delivered the opinion of the court.

On the fourteenth day of December, 1885, George W. Misselhorn made and presented to the defendant's agent at St. Louis his written application for membership in the defendant corporation, and for a certificate of insurance for the sum of two thousand dollars, payable to the plaintiff in this case. On the same day defendant's agent forwarded said application to the home office of the defendant at the City of New York. The said application was duly approved and the certificate of insurance sued on herein written on the twenty-second day of December, 1885. The certificate of insurance was, on the twenty-third day of December, 1885, forwarded to the defendant's local agent at the city of St. Louis, and was by him received on the twenty-sixth day of December, 1885. On or about the thirtieth

day of December, 1885, said certificate was delivered to Wm. H. Misselhorn (son of the assured) by a messenger boy. The defendant did not know at that time that George W. Misselhorn was dead. Plaintiff then demanded the amount claimed to have been insured. The defendant refused payment and denied all liability, and tendered the plaintiff the sum said George W. Misselhorn had paid to it on account of said insurance, which tender was refused. Plaintiff then filed the petition herein praying judgment for the amount claimed to have been insured by said certificate.

To this petition defendant filed its answer, pleading the provisions of the application, certificate, constitution and by-laws, and denying all liability.

The plaintiff for her reply averred, that it was true that said policy of insurance was dated December 22, but that the plaintiff and defendant did contract and agree upon said insurance prior to said date, and during the life of George W. Misselhorn ; that the husband of the plaintiff was solicited by defendant in November, 1885, in the city of St. Louis to effect insurance upon his life, and that thereupon on December 4, 1885, the deceased did sign an application for insurance and did submit to the examination required by defendant, and did answer all inquiries made of him by defendant in a manner satisfactory to defendant ; that the medical examiner of the defendant did, on December 4, 1885, certify under his hand that the said deceased was a first-class risk ; that thereupon, on the fourth day of December, 1885, the defendant did insure the life of said George W. Misselhorn in and for the sum of two thousand dollars, for the benefit of the plaintiff. And defendant then and there promised to pay said sum to plaintiff upon the death of said George W. Misselhorn, provided the plaintiff did well and truly pay all premiums, charges and assessments made for such insurance on account thereof, and plaintiff states that she did well and truly pay to the defendant all charges, premiums and

assessments made for such insurance. And the plaintiff states that all such charges, premiums and assessments required of plaintiff by defendant were paid by plaintiff, and that said policy at no time was to be delivered to said George W. Misselhorn, but that it was expressly agreed by the plaintiff and defendant that said policy should be delivered to plaintiff, and plaintiff states that it was so delivered.

The defendant moved the court to strike out that part of the plaintiff's reply beginning with the words "provided the plaintiff did well and truly pay all premiums," down to and including the words, "and plaintiff states that it was so delivered," because the portion so asked to be stricken out was irrelevant and immaterial and contradictory to other portions of plaintiff's petition and reply.

This motion to strike out was sustained and exceptions duly taken.

The cause was tried by the court, sitting as a jury, and one or two other exceptions were saved to the rejection of certain statements of witnesses which it is unnecessary to discuss, as they could, in no way, have affected the result had they been permitted to stand.

The testimony shows that on December 21, just one day prior to the day on which the certificate was issued at the home office in New York, the insured, George W. Misselhorn, died.

At the close of plaintiff's case the court gave an instruction, that under the pleadings and evidence, there could be no recovery, whereupon after duly excepting, plaintiff took a non-suit. After the usual motions to set aside, which were overruled at the June term, 1886, plaintiff, in January, 1888, brings the record here by writ of error.

The real question this record presents is this, was there a contract of insurance between the parties? In other words, was the contract here set up actually made and completed between the parties?

Leading writers on insurance note the distinction

between an agreement to insure and be insured, and a contract of insurance—the policy. The steps towards obtaining insurance, the negotiations, arranging the terms of the agreement between the parties as to what the contract of insurance shall be, constitute the preliminary agreement, but the policy which is issued and delivered in accordance with these negotiations and terms is the contract of insurance.

When is the contract completed? When does the liability become fixed upon the insurer?

May, in his work on Insurance, thus lays down the law: "Questions frequently arise, sometimes of great difficulty, as to the fact whether any contract has been made. Negotiations have been had, but have they resulted in a contract? This, of course, depends upon the question whether the respective parties have come to an understanding upon all the elements of the contract—the parties thereto." May on Ins., sec. 43. "And generally upon all the circumstances which are peculiar to the contract and distinguish it from every other, so that nothing remains to be done but to fill up the policy and deliver it on the one hand and pay the premium on the other. If upon all these points, an agreement has been arrived at, and no stipulation is made that the delivery of the policy shall be the test of the consummation of the contract and no law makes such delivery a condition precedent to its validity from that time, unless another time is fixed, the contract is complete and binds the parties." Ibid., sec. 43. "The agreement for insurance is complete when the terms thereof have been agreed upon between the parties, and the reciprocal rights and obligations of the insurer and the insured date from that moment without reference to the execution and delivery of the policy, unless these two elements are embraced within the terms agreed upon." Ibid., sec. 44.

When, then, did this contract arise? What elements, or terms, or conditions were agreed upon by

which the fixing of the liability of the insurer should be determined?

Among other things the said application introduced in evidence by plaintiff, contained the following provisions:

"It is hereby warranted by the applicant, that the answers and statements in this application, whether written by his own hand or not, are full, complete and true, and it is agreed that this warranty shall form the basis and shall be a part of the contract between the undersigned and The Mutual Reserve Fund Life Association, and are offered to said association as a consideration of the contract applied for, and subject to all the limitations and requirements of the constitution and by-laws of said association, with the amendments made or that may hereafter be made thereto, all of which are hereby made a part of any certificate that may be issued on this application. And the applicant further agrees that if any of the statements, representations or answers made herein are not true, full and complete, or if he or his representatives shall omit or neglect to make payment as required by the conditions of said certificate, or by the constitution and by-laws of said association, then the certificate to be issued hereon shall be null and void, and the officers of said association may cancel said certificate and the same shall be returned to them, and all the money paid thereon shall be forfeited to said association.

"It is hereby expressly agreed that the person soliciting or taking this application, also the medical examiner, shall be and is my agent, and not that of said association as to all answers and statements in this application, and inasmuch as only the officers at the home office of the association, in the City of New York, have authority to determine whether or not a certificate shall issue on any application, and as they act on the written statement and representations referred to, no statements, or representations or information made or

given by or to the person soliciting or taking this application for a certificate, or by or to any other person, or to the association, shall be binding on the association, or in any manner affect its rights, unless such statements, representations or information be reduced to writing, and presented to the officers of the association at the home office, in this application ; that under no circumstances shall the certificate hereby applied for be in force until the actual payment to, and acceptance of the first annual dues by the association, and actual delivery of the certificate to the applicant with a receipt for the payment of the first annual dues, signed by the president, secretary or treasurer of the association during the lifetime of the applicant. And it is further agreed that the association shall not be liable under said contract if death shall be caused by the hands of justice, or in consequence of the violation of any law."

The said certificate of insurance, also introduced by plaintiff, contained, among others, the following provisions :

"The Mutual Reserve Fund Life Association, from and after the delivery hereof, with a receipt for the payment of the first annual dues, signed by the president, secretary, or treasurer of said association, does hereby receive George W. Misselhorn as a member of said association," etc.

Also the following :   "This contract is not binding until the written application therefor shall have been received, accepted, and this certificate issued by this association and delivered to said member, in person, during his life ; nor until the first payments due thereunder shall have been fully received in cash by the association, or by its agent furnished with a receipt therefor as herein provided, and shall be subject to all the provisions and conditions contained in the constitution and by-laws of this association, with the amendments made and that may hereafter be made thereto."

And also :   "The entire contract contained in this certificate and said application, taken together, shall be

governed by, subject to, and construed only according to, the constitution, by-laws, and regulations of said association, and the laws of the state of New York."

By article eight, of the constitution of defendant, it is provided: "Sec. 1. Only such persons who are in good health, who shall pass a rigid medical examination, and be approved by the medical director or his deputy, and the executive committee or its duly appointed representative, may become members of the association, subject to all the requirements for membership set forth in the constitution, by-laws, and in the application for and certificate of membership."

On December 21, 1885, the day previous to the writing of said certificate at the home office of defendant, George W. Misselhorn died.

Provisions and sections of the application and certificate and of the constitution and by-laws of the defendant corporation, as pleaded by it in its answer, all go to show that defendant had attempted with much care and certainty to fix the terms upon which this contract of insurance should begin, and the time at which it should take effect and become binding upon all parties. Certainly the intentions of the parties are plainly expressed. There is no room for controversy as to the meaning of such plain English as "actual delivery of the certificate to the applicant" with a receipt, etc., etc., "during the lifetime of the applicant."

We can see no force or application in the argument of counsel for appellant that this provision was waived by the making of the plaintiff the beneficiary. The contract was to be made with the applicant and he was permitted to name a beneficiary. This is necessarily true of all life insurance, but does not vary, change, or annul any of the conditions of the contract, or relieve the applicant from a compliance with any of its terms. We have nothing to do here with the reasonableness or unreasonableness of these terms and conditions, nor with the fact that there may have been delay upon the part of the defendant or its agents. A specific person,

event, and time were named that should give life, force, and completeness to this contract, and argument cannot change them or substitute any other element in their stead.

To adopt the view of the plaintiff in error, we must either declare this contract complete at another time and way than named by the parties themselves in their negotiations and agreements, or else declare there was a consummation, a meeting of the two minds, at a period several days after the death of the party.

In the case of *Noyes v. The Phoenix Life Insurance Company*, 1 Mo. App. 584, the policy in controversy contained a provision that it should "take effect when countersigned by H. Conwell, agent at St. Joseph." When the policy reached the agent at St. Joseph the applicant was dead. Judge Bakewell in his opinion says: "The company had made no contract to insure. The most that can be said is, that negotiations had gone thus far—that defendant had said that their agent, on the arrival of the policy, might make a contract with Noyes on the terms therein named. * * * When the policy arrived at St. Joseph, the subject of insurance no longer existed and the negotiation was necessarily at an end. Had the agent then countersigned and delivered the policy, it would have availed nothing, for, to make it available, the risk must by the express terms of the contract, by impossibility, have commenced then, and only then, after the destruction of the life of Noyes, the thing to be insured, which is absurd." 1 Mo. App. 584.

In Massachusetts where the policy recited, "Nor shall this policy be in force until it be countersigned by A. F. Badger, agent at Boston," and a policy had been issued to Badger himself, which was found among his papers not countersigned, after his death, the court held the policy invalid until so countersigned. *Badger v. Am. Popular Life Ins. Co.*, 103 Mass. 244.

This same principle is upheld by the Supreme Court of the United States, in the case of *Tayloe v. Merchants'*

*Insurance Co.*, 9 How. 390, in deciding which the court says that the contract is complete without the execution and delivery of the policy unless these two elements are embraced within the terms agreed upon.

The *Keim* and *Baldwin cases* in 42 and 56 Missouri Reports, and others urged by plaintiff in error, do not conflict with the law and authorities cited.

The competency of parties to themselves arrange the terms and conditions of the contract and to expressly determine and declare when it shall become operative, cannot in a proceeding like this be questioned, nor can their motives here be inquired into. The same reason that would permit them to set a date would permit them to adopt a condition or call for the actual existence of an individual, as the determining factor establishing the completeness of the contract and fixing the period of liability. This form of policy and the same questions are sustained by Judge Brewer. *Kohen v. Life Ass'n*, 28 Fed. Rep. 705 ; *Misselhorn v. Life Ass'n*, 30 Fed. Rep. 545.

The judgment of the lower court is, therefore, affirmed. All concur